Turney, J.,
delivered the opinion of the Court.
That part of the charge, to which objection is mainly urged and for which a reversal is asked, is in the language following: — “ If you find further from the proof, that John Green was the Section Boss” or foreman of said section, in the employ of the defendant, and employed the plaintiff, as section laborer, to work under him, and that by the wrongful or neglectful acts of Green, in and about the business of the defendant, the plaintiff was injured, then the defendant would be liable for the injury.”
This extract must be considered in connection with the concluding paragraph of the charge, delivered at the request of the defendant’s attorney:—
*868 “ If you find, from the evidence, that the plaintiff could have prevented the accident by using ordinary care, then he would not be entitled to recover,, unless the injury was inflicted by the gross negligence-of the defendant.”
It is here insisted that the plaintiff in error is not answerable to Bowler for an injury done to him through the carelessness or want of skill on the part of the “Section, Boss” Green, — both being engaged in the same service; and, in support of this position, we have been referred to several authorities, all of which, that were within our reach, we have carefully read and considered, but deem it necessary to notice only such as more nearly relate to the question.
The case of Gilshoman v. Stony Brook Railroad Corporation, 10 Cushing, 231, holds that the plaintiff, a laborer in the construction of a Railroad bed, could maintain no action for an injury resulting to him from-a collision caused by the negligence of the Company’s servants in charge of the train, although both servants were not in a common employment, — the plaintiff not being engaged in any duty connected with the running of the trains.
The only notice we give this case is, that it is in direct conflict with the holding of this Court at Knoxville, at its December Term, 1871, in the case of The Nashville & Chattanooga and The Memphis & Charleston Railroad Co’s. v. J. M. Carroll, Adm’r, — opinion by Judge Freeman.*
*869 Hayes v. The Western Railroad Corporation, 3 Cush., 272, is a case in which one brakesman was injured by the negligence of another brakesman, and in which the counsel for the plaintiff endeavored to distinguish it from the case of Farwell v. The Boston and Worcester Railroad, by the fact that in the latter case, the party in fault and the party injured were of the same grade. To which the Court says: “ It is not necessary to -consider particularly the soundness of this argument, because, even if it were correct in principle, it fails -entirely in matter of.' fact. It is distinctly set forth and settled by the report that the party chargeable with neglect and the party injured were both brakes-men of precisely the same grade.” So the question here was not presented in that case.
As said by Robertson, C. J., in L. & N. R. R. Co. v. Collins: “ In every class of cases of bailment or trust, the requisite care is proportioned to the danger of neglect, and the difficulty of conservative management : ordinary care, in many classes of cases, might be -ordinary neglect, and ordinary neglect might be gross neglect in steam operations on a Railway.” 2 Duvall Ky. Rep., 114
We may enlarge the statement of the principle, by adding, that ordinary neglect may be gross neglect in the conduct of work upon Railways over which trains are habitually passing, and upon which, construction trains or burthen cars, are kept and used for repair purposes.
We appropriate the idea and, in the main, the language of the Court in the case last quoted, and *870 declare the rule to be, that in the' employment and control of his subordinates, “The Section Boss” acts as the representative or agent of the Common Superior, the Corporation. His subordinates have no authority to control or resist him in his allotted sphere of service. And why, then, should the Law imply a contract, on their part, to trust him alone, and never look to the' Corporation, as his employer or constituent, for indemnity for damages resulting from his wrongful act or negligent omission of duty ? When they engaged to-serve under him, perhaps, they knew nothing of his. trustworthiness or credit. But, they knew that they would serve a Corporation; and, probably, their faith in its responsibility and protection induced them to-venture into its service.
There is a vast difference in the skill and experience necessary to discharge the duties of “Section Boss” on a Kail way, and that required of the common laborer, who is employed solely because of physical strength and ability to do manual labor. The two offices create the relation of master and servant. To discharge the duties of the former, experience, skill,, and education in the particular business are absolutely-necessary. It is the duty of the Corporation to see-that these elements, combined with carefulness and attention, constitute the character of its employe. In. the latter, it is only necessary that he have capacity to understand an order, and physical strength to execute it. It is not necessary, that he should have-been upon and have seen a Railway before his contract to labor.
*871 It is absurd to hold that the common manual laborer, as a general rule, understands the management of such work, its proper mode of execution, and the dangers attending it, equally with him who sets himself' up as the overseer, director, and architect of it.
In the case of Haynes v. The E. Tenn. & Ga. Railroad Company, 3 Col., 222, Judge Shackleford, delivering-the opinion of the Court, quotes approvingly the opinion of Ch. J. Eobertson already referred to, and truthfully adds: “The increasing number of Corporations, with the concentrated wealth they draw to them, is a strong and conclusive reason why they should be held to a strict account for the acts of their officers.. Sound public policy requires that this rule should be adopted in this State. Knowing the responsibility they are under, they will see that none but competent-men fill the responsible stations.”
The fact and the argument, that a subordinate may elect to disobey the orders of his superior, and, if' discharged for so doing, appeal to the Common Superior, and, if right in his disobedience, be restored to his position, can have no weight with Courts in the investigation of a suit for injuries received by him. We can see, at once, that such conduct could not be submitted to by Corporations of the character of Eailroads. It would tend to delay the building and repairing of Eoads, break down the authority of the manager, give to each common laborer a voice in the manner of performing the work, and result, possibly, in as many different plans for its execution as there are laborers on each section of Eoad to be built or repaired,— *872 thus bringing the work to a lock, and endangering the lives of passengers, and employes.
The rule, if it exists, that such a course may be taken by the subordinate, is insufficient; and, if attempted to be practiced, would be abolished or utterly disregarded by the Company. The only sound rule is to hold the Common Superior, which can only act through its agents, responsible for all injuries resulting to the subordinate from the negligence of his immediate superior, or the party having control over him.
That part of the charge, submitted at the instance •of the defendant, which has been before recited in this opinion, does away with any necessity to consider the question of contributory negligence, as the jury must have concluded there was no such negligence, before finding a verdict responding to it.
Affirm the judgment.
Since writing the foregoing opinion, our attention has been called to the case of The Cleveland, Columbus & Cincinnati Railroad Co. v. Anthony Keary, 3 Ohio State Report, 201, with which this opinion is in strict accord. Turney, Judge.

6 Heis., 347.